51 F.3d 275
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Joseph M. GLISSON, Plaintiff-Appellant,
v.
UNITED STATES FOREST SERVICE, et al., Defendants-Appellees.
 No. 93-3378.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 4, 1995.*
Decided April 5, 1995.
 
 Before POSNER, Chief Judge, and FAIRCHILD and KANNE, Circuit Judges.
 
 ORDER
 
 1
 This action arose out of the U.S. Forest Service's adoption of an ecological restoration program as part of its 1992 Amended Land and Resource Management Plan for the Shawnee National Forest in southern Illinois. The ecological restoration program involves the conversion of the non-native pine trees in the forest to the natural hardwoods that existed prior to European settlement of the area in the early 1800s. Settlers in the area deforested the land and farmed it intensively. In the 1920s and 1930s, worn-out soil, erosion, drought, and the Great Depression led farmers to abandon the land. The Forest Service purchased the land in the 1930s and reclaimed it by planting non-native pine trees to rehabilitate the soil and revegetate the region. The replacement of the pine trees with the native, pre-settlement hardwood trees, is the goal of the Forest Service's ecological restoration.
 
 
 2
 The plaintiff, Joseph Glisson, proceeding pro se, brought this action in district court seeking judicial review of the U.S. Forest Service's decision to restore the native hardwood trees in an area of the forest known as Opportunity Area 6 ("OA-6"), located 18 miles south of Harrisburg, Illinois, and just west of Eddyville, Illinois.[2] Glisson argued, among other things, that ecological restoration, as authorized by the Amended Plan and as implemented in OA-6, violates the National Forest Management Act ("NFMA"), 16 U.S.C. Secs. 1600 et seq., and NFMA regulations, specifically, 36 C.F.R. Sec. 219.19, by resulting in less than viable populations of the pine warbler, which inhabits mature pine stands in the Shawnee National Forest.
 
 
 3
 The district judge concluded that judicial review was barred on the issue of the Forest Service's compliance with the viability requirement of 36 C.F.R. Sec. 219.19 because Glisson failed to exhaust his administrative remedies. The judge found that Glisson did not raise this issue in his administrative appeal of the OA-6 project.[3] However, the judge did not consider whether Glisson presented it in his administrative appeal of the Amended Forest Plan.[4] The district judge stated:
 
 
 4
 One issue that does not fall into this category [of exhausted claims] is the plaintiff's main argument on appeal--i.e., that the ecological restoration program violates section 219.19 of the Forest Service regulations by failing to maintain viable populations of the pine warbler, which is one of the forest's management indicator species. The plaintiff does not mention this argument at all in his narrative description of his objections to the Opportunity Area 6 decision. Nor did he mention section 219.19 in his laundry list of regulations that he asserts were violated by the [Opportunity Area-6] decision. The Court, therefore, finds that the plaintiff is barred from raising the issue in the pending lawsuit.
 
 
 5
 Glisson v. United States Forest Service, No. 92-4205, Mem.Op. at 13 (S.D.Ill. Aug. 24, 1993). Nevertheless, "for the sake of completeness and efficiency," the district judge decided the merits of Glisson's claim, holding that the pine warbler is not indigenous to the southern Illinois area, and therefore the Forest Service is not required to maintain viable populations of that species pursuant to 36 C.F.R. Sec. 219.19. Id. at 17.
 
 
 6
 Contrary to the district judge's conclusion, we believe that the exhaustion requirement has been satisfied concerning the Forest Service's alleged violation of 36 C.F.R. Sec. 219.19. The administrative record shows that although Glisson's notice of appeal of the OA-6 decision failed to adequately address the viability of the pine warbler, Glisson squarely raised the issue on appeal of the Amended Forest Plan,[5] which as a final action of the agency was within the district court's scope of review. See 5 U.S.C. Sec. 704 (permitting judicial review of final agency action). In addition, the administrative record shows that the Forest Service considered the requirements of 36 C.F.R. Sec. 219.19 in disposing of that appeal and in upholding the Amended Plan. The Forest Service's position that compliance with section 219.19 is an issue more appropriately addressed at the project-level, or OA-6, stage, is without citation to any authority, and necessarily must fail in light of our recent opinion in Sierra Club v. Marita, 46 F.3d 606 (7th Cir.1995), which holds in the context of the standing and ripeness doctrines that a plaintiff may challenge the adequacy of a forest management plan either before site-specific action is undertaken pursuant to the plan or in the course of attacking a specific project. See id. at 611-13 & 613 n. 5.
 
 
 7
 Turning to the merits, 36 C.F.R. Sec. 219.19 provides that the "[f]ish and wildlife habitat shall be managed to maintain viable populations of existing native and desired non-native vertebrate species" in the forest. Under the regulation, if the pine warbler is a "native" species, then viable populations of the bird must be maintained. If it is not "native," however, section 219.19's requirements do not apply. In interpreting this regulation, the Forest Service decided that the pine warbler is not a "native" vertebrate to southern Illinois. It reasoned that the pine trees that are the warbler's habitat are not native to the area. The pine warbler became established only after the non-native pines were planted there in the years following the 1930s.[6] Glisson has pointed to insufficient evidence in the administrative record to support his allegation that the pine warbler is, in fact, a "native" species to the Shawnee National Forest. Accordingly, we cannot say that the Forest Service's determination to the contrary was arbitrary or capricious. 5 U.S.C. Sec. 706(2); Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 414 (1971). The district court's entry of summary judgment for the defendants is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record
 
 
 [2]
 It is uncontested that Glisson's use and enjoyment of the Shawnee National Forest is a concrete and legally cognizable injury, and thus satisfies Article III's standing requirement. Sierra Club v. Marita, 46 F.3d 606, 611 (7th Cir.1995)
 
 
 [3]
 The OA-6 project became a final administrative decision of the Department of Agriculture three days before Glisson filed his federal complaint. 36 C.F.R. Sec. 217.7(e)(3) (1992). (Ex. F at 28)
 
 
 [4]
 The Amended Plan became a final administrative decision of the Department of Agriculture during the pendency of the district court's proceedings. 36 C.F.R. Secs. 217.7(e)(1), (2) & Sec. 217.17 (1992). (Vol. IV, R. 50)
 
 
 [5]
 The notice of appeal regarding the Amended Forest Plan stated, in relevant part:
 The Plan also violates the requirements at (36 CFR 219.19) which requires the FS [Forest Service] to manage the Forest in a manner that insures the continued existence of minimum viable populations of native and desirable non-native vertebrate species. Appellant contends that some of these species have reached a population viability threshold and further fragmentation significantly increases the likelihood that one or more of these species will cross that threshold and be extirpated from the Shawnee National Forest as a direct result of FS activities and in direct violation of federal law. The FY 1990 Monitoring and Evaluation Report for the SNF supports this position by noting that the timber sale practices on the SNF have resulted in the loss of management indicator species.
 * * *
 This [ecological restoration of the forest] calls for extirpation of at least one vertebrate species (pine warbler) and the population decline of several others without any reasoned analysis justifying this course of action.
 * * *
 The agency attempts to circumvent the requirements found at 36 CFR 219.19 by simply stating that pine is not a "desired species" without explanation or discussion of the expressed concerns of such notable scientists as Dr. Jean Graber....
 * * *
 The FSEIS [Final Supplemental Environmental Impact Statement] Appendices indicates that the FS knows that some species population levels are declining below acceptable minimum viable population levels. The Pine Warbler guild and the Great Crested Flycatcher guild will decline below acceptable levels according to the FS' own projections. The FS attempts to justify these population declines by stating that the public wants the FS to eliminate pine habitat from the Forest. The FS states that comments from the public leave "no room for doubt about that" and yet the comments re: pine harvest ... indicate only ONE person commented on the desirability of eliminating the pine. This indicative of the FS trying to justify long-standing policy and represents an arbitrary and capricious abuse of discretionary authority.
 (Ex. H at 2, 6-7, 11).
 
 
 [6]
 See R. 50 at 36; Ex. B at 232; Ex. G3 at H1 & H23-24; Ex. G4 at 15-16; Item 5e at H30-31